182 So.2d 691 (1965)
Gordon E. NAQUIN et al.
v.
BATON ROUGE COCA-COLA BOTTLING CO., Ltd.
No. 6493.
Court of Appeal of Louisiana, First Circuit.
December 21, 1965.
Rehearing Denied January 24, 1966.
Writ Refused March 28, 1966.
Calvin E. Hardin, Jr., of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for appellants.
Gerald L. Walter, Jr., of Kantrow, Spaht & Kleinpeter, Baton Rouge, for appellee.
Before LOTTINGER, LANDRY, REID and BAILES, JJ., and F. S. ELLIS, J. pro. tem.
REID, Judge.
Plaintiffs, Gordon E. Naquin and Mrs. Virginia Watkins Naquin, instituted this action against the Baton Rouge Coca-Cola Bottling Co., Ltd., seeking judgment in favor of Mrs. Virginia Watkins Naquin in the amount of $8,000 for injuries allegedly *692 suffered by her as a result of exploding Coca-Cola bottles, and in favor of her husband Gordon E. Naquin in the amount of $327.00 for medical expenses and expenses of nurse care for their child.
Plaintiffs' petition alleges that on June 6, 1962, Mrs. Virginia Watkins Naquin was shopping in Food Town, Inc., No. 1, located at 6324 Plank Road, Baton Rouge, Louisiana, where she selected a carton of "king size" Coca-Cola from the top of a stack of Coca-Cola, that she did not touch any of the other cartons, that she turned around to place the chosen carton in her shopping carriage, and as she stood with her back to the shelves containing the Coca-Cola a number of Coca-Cola bottles in the cartons remaining on the shelves exploded and fragments of glass struck Mrs. Naquin on her legs, causing lacerations of both legs requiring sutures, permanent disfigurement, the necessity of taking a tetanus shot, mental anguish, and distress occasioned by incapacity and inability to care for her child.
Plaintiffs' counsel of record withdrew from the case and their new counsel filed a supplemental petition naming Food Town, Inc., as a party defendant and prayed for judgment in the same amounts as contained in the original petition but against Baton Rouge Coca-Cola Bottling Company and Food Town, Inc., in solido.
Baton Rouge Coca-Cola Bottling Company, Limited filed an answer of general denial and specifically alleged that no bottle of Coca-Cola bottled and distributed by it to Food Town could or would break if given proper and normal handling and use, and in the alternative plead contributory negligence on the part of Mrs. Naquin.
The alleged accident happened on June 6, 1962, plaintiffs' petition was filed on February 25, 1963, the case was assigned for trial on October 28, 1964, and on that date was submitted on briefs. On the previous day, October 27, 1964, the suit had been dismissed as to Food Town, Inc., upon agreement by its insurer to pay plaintiffs the sum of $250.00.
For oral reasons assigned, judgment was rendered January 28, 1965, against Baton Rouge Coca-Cola Bottling Company, Ltd. and in favor of Mrs. Virginia Watkins Naquin in the sum of $950.00 for physical pain and suffering, disfigurement, and mental anguish and distress, with legal interest from judicial demand until paid, and in favor of Gordon E. Naquin in the amount of $109.50, with legal interest from judicial demand. Judgment was signed January 29, 1965. The signed judgment contained the following: "It is further ordered, adjudged and decreed that defendant, Baton Rouge Coca-Cola Bottling Company, Ltd., was not deprived of any right to enforce contribution against the released defendant and that plaintiffs are entitled to recover the full amounts awarded herein from defendant, Baton Rouge Coca-Cola Bottling Company, Limited." The said defendant Baton Rouge Coca-Cola Bottling Company, Ltd. appealed to this Court.
In his oral reasons for judgment the Trial Judge said:
"The court, being of the opinion that the doctrine of res ipsa loquitur is applicable in this case and that from a consideration of all the evidence the only reasonable conclusion that it can arrive at is that the proximate cause of the explosions of the bottles which resulted in injury to plaintiff, Mrs. Virginia Watkins Naquin, was due to some fault on the part of the agents or employees of the defendant in the preparation of the bottled product * * *.
"The Court, for additional oral reasons assigned, holds that although plaintiffs alleged that the released defendant, Food Town, Inc., was a joint tortfeasor in this case, the evidence showed that said released defendant was not guilty of any negligence proximately causing or contributing to the injury sustained by plaintiff, Mrs. Virginia Watkins Naquin, and that, therefore, defendant, Baton Rouge Coca-Cola Bottling Company Limited, was *693 not deprived of any right to enforce contribution against the released defendant and that plaintiffs are entitled to recover the full amounts awarded herein from defendant, Baton Rouge Coca-Cola Bottling Company, Limited."
The issue before the Court was whether or not the doctrine of res ipsa loquitur applied to the case at issue. It is well established under Louisiana jurisprudence that only under certain circumstances does the doctrine of res ipsa loquitur apply.
The record in this case shows that the plaintiff Mrs. Naquin was the sole witness to the facts that occurred and without going into her testimony in detail, the portions pertinent here are: That she had taken a carton of Coca-Cola from a display case, had turned her back on the display, heard a loud noise and felt something hit her leg. She was emphatic that she had not touched or brushed any other carton and that the bottle had not exploded after striking the floor but exploded from the shelf. She further testified she heard no sound of tumbling or falling bottles and on cross examination said she heard the sound of more than one exploding bottle. She was sure there were at least three bottles. Despite extensive cross examination plaintiff was definite in her testimony that the bottles which exploded were Coca-Cola bottles, saying:
"Q. How many bottles did you see on the floor?
A. I didn't count the bottles.
Q. Did you see a carton on the floor or not?
A. I saw glass.
Q. You saw no carton at all?
A. I do not remember.
Q. Did you look at the glass to see what kind of bottles
A. They were coke bottles.
Q. Are you certain about that, ma'am?
A. I am positive about it.
Q. How big were the pieces of glass?
A. Some of them were very, very small and some of them were large.
Q. How could you tell they were coke bottles.
A. Because they were the color of coke bottles.
Q. What color are they?
A. Green.
Q. What color are Seven-Up bottles?
A. Seven-Up bottles are a much darker green.
Q. What color are Grapette bottles?
A. They are white.
Q. What about root beer?
A. They are white.
Q. By looking at the broken bits of glass on the floor and determining what color green they were, is that how you decided this was a a coke bottle?
A. The fact that they were the color of coke bottles and they were there by the coke rack, and there were no other bottles in the coke rack, would indicate to me that they were coke bottles.
Q. What was the last thing you said? There were no other bottles in the coke rack. What do you mean?
A. I mean after having noticed that the coke rack was completely full of coke cartons, then I know there was no other type of bottles in that rack."
Mrs. Naquin also testified that after the explosion she had coke all over her clothes, *694 and this fact was verified by the witness Sarah Walker who said: Well I think anybody could just about tell coke when they see it."
None of the employees at the store saw the accident, nor could they give any rational explanation as to how the accident occurred. The defendant makes much of the fact that, as stipulated between counsel and as testified by Mr. Charles Guerin, Assistant Manager of Food Town, certain deliveries of coke were made to Food Town, Inc., No. 1, on Monday, June 4, 1962 (at which time 27 cases of king size coke and 41 cases of regular size coke were delivered) and on Thursday, June 7, 1962 (at which time 15 cases of king size coke and 83 cases of regular size coke were delivered), but no deliveries were made on Tuesday, June 5, or Wednesday, June 6. Regular deliveries were always made to Food Town, Inc., No. 1, on Mondays and Thursdays. Mr. Charles Guerin testified that when an employee of Coca-Cola Bottling Company called on Food Town, Inc., No. 1, he would first fill the display area inside the store and then go to a shed outside the store, where extra cases of various beverages were kept, in order to determine how many cases of Coca-Cola were required to bring the store's supply up to normal complement. When it became necessary for the store to add to the display case, cokes were removed from the bin outside the store and placed upon the display shelves by an employee of Food Town, Inc. This was done by the store's employees only on Fridays and Saturdays. Defendant therefore argued that the doctrine of res ipsa loquitur would not apply because the Coca-Cola was not completely under the control of the defendant, Baton Rouge Coca-Cola Bottling Company, Ltd. but were also under the control of the employees of the store. The defendant argued there was no definite showing that the explosion was caused by Coca-Cola and pointed out the fact that there were other bottles kept in the area and no portion of a bottle was saved as evidence.
The Trial Judge, after hearing the evidence, felt that the doctrine of res ipsa loquitur did apply. Under the jurisprudence of Louisiana the doctrine of res ipsa loquitur has been applied by the courts in certain cases concerning exploding bottles in which the facts were similar to the case at issue. In Johnson v. Louisiana Coca-Cola Bottling Co., La.App., 63 So.2d 459, the defendant made a delivery of six cases of Coca-Cola to a storekeeper on June 7, 1951, and on the morning of June 10 the storekeeper sold and delivered two cases of the beverage to plaintiff's sister who was giving a party following the baptism of her husband. She had invited plaintiff, her brother, to her home and asked him if he would ice and serve the Coca-Cola. He carried the two cases of the beverage from her kitchen to the rear yard, chipped 75 pounds of ice and placed one and a half cases of the Coca-Cola on top of the ice. He finished icing the drinks and approximately three hours later the plaintiff, at the request of one of the guests, leaned over the keg containing the iced cokes but before he could touch anything one of the bottles exploded and struck him in the eye. Certainly the facts in that case are much stronger in regard to the handling of the cokes after they left defendant's control. In the Johnson case the Court applied the doctrine of res ipsa loquitur and cited the holding of Chief Justice Fournet in Ortego v. Nehi Bottling Works, 199 La. 599, 6 So. 2d 677, saying:
"The Supreme Court in the Ortego case cited with approval the case of Payne v. Rome Coca-Cola Bottling Co., 1912, 10 Ga.App. 762, 73 S.E. 1087 and stated [199 La. 599, 6 So.2d 678.]
"`Although the case of Payne v. Rome Coca-Cola Bottling Company, supra, was decided in 1912, some thirty years ago (now 41 years ago), it remains today one of the leading cases on this subject.'
"In the Payne case the Georgia Court reasoned that `Since for every *695 effect there is a cause, where negligence exists, some one must have been the responsible author. If he can be found, it is right that he should pay the penalty. The bottle exploded. Inferentially some one was negligent. It was not Cook, the last vendor of the bottle, nor the plaintiff's brother, nor the plaintiff, nor yet Barnet, because they all stand exonerated by direct or circumstantial evidence of their freedom from fault. But the inference of negligence remains, and some one is prima facie to blame. By a process of elimination we get back to the manufacturer, who set the dangerous agency in motion and upon whom the blame ought inferentially to be fastened. It is certainly no hardship to require at the manufacturer's hands an explanation of the occurrence, that the jury may say whether it, like the other persons who handled the bottle, has been exonerated. * * * It charged the bottle with carbonic acid gas, it put together the constituent elements of the beverage, it manufactured or procured the bottle to hold these elements, and it put the bottle in circulation, with an invitation to the public to use the contents as a harmless and refreshing beverage.' [10 Ga.App. 762, 73 S.E. 1088.]"
In the Johnson case the Court further held:
We, in the final analysis, share the view expressed by the Supreme Court in the Ortego case:
"`It is impossible for the court to say with any degree of certainty exactly what caused the explosion of the bottle in this case. After reviewing all of the evidence before us, the only reasonable conclusion that we can arrive at is that the proximate cause of the explosion which resulted in injury to the relators was some fault on the part of the agents or employees of the respondents in the preparation or handling of the bottled product.'"
Mr. Fred H. Bock, the General Manager of the local Coca-Cola Bottling Company testified that he had seen thousands and thousands of coca-cola and had never seen one sitting perfectly still explode, but he further testified he meant he had never seen a normal bottle explode of its own accord and that if a bottle was defective it would break in the plant. He went on to state, however, that on an average day a dozen or maybe two dozen bottles broke in the plant. He further testified that the coke machines were tested periodically as a safety precaution against explosion. He also testified that the pressure could vary, and admitted that the only device for checking defective bottles was a pressure gauge and that if a bottle did not break at the plant during the filling process it would be considered as non-defective. However, in view of the long line of jurisprudence in this state and in other states awarding damages for exploding bottles under the doctrine of res ipsa loquitur, not much weight can be given to the statement of Mr. Brock to the effect that bottles standing still never explode.
Considering the record as a whole, and in view of the fact that the defendant Coca-Cola Bottling Company was unable to show any other cause for the exploding of the bottle, it cannot be said the Judge's application of res ipsa loquitur was manifestly erroneous. It is the opinion of this Court that the facts of this case fall within the well established jurisprudence set forth in the Ortego and Johnson cases, supra.
Counsel for defendant argues that if the Coca-Cola Bottling Company is held responsible the award should be for one-half of the actual damages and cites the case of Harvey v. Travelers Insurance Co., La. App., 163 So.2d 915, wherein it was held:
"We conclude, therefore, that where the claimant in a tort action settles with and releases one of two joint tort-feasors, reserving all of his rights against the other, the remaining tortfeasor is thereby deprived of his right *696 to enforce contribution against the one who has been released. And, since the claimant by his own act has deprived the unreleased tort-feasor of this right to enforce contribution, he can recover from the latter only one-half of the damages which he sustained."
The Court then went on to hold, however, that it rested upon the retained defendant to bear the burden of proving that the released defendant was also responsible, saying:
"In our opinion the burden of proof rests upon Davidson and Travelers to establish that the driver of the Downs car was negligent, and thus that he was a joint tort-feasor. The fact that plaintiffs have specifically alleged negligence on the part of the driver of the Downs car may have some important bearing on this burden of proof, there being some question, in view of this allegation, as to whether any additional proof of negligence on the part of Downs is needed at all. That issue, however, is not before us at this time and we express no opinion whatsoever as to what effect these allegations in plaintiffs' petition may have on the type of proof which will be required in the trial of this case on its merits."
Defendant maintains the declarations of solidary liability in plaintiffs' petition is tantamount to a judicial confession binding upon plaintiffs and therefore under the jurisprudence, defendants are liable to plaintiffs only in the sum of one-half of the judgment rendered considering plaintiffs' prior release of defendants' solidary obligor.
Defendant's position would be well taken if the declaration of solidary liability in plaintiffs' petition were in fact a judicial confession. Such, however, is not the case. It now appears well settled in our jurisprudence that allegations of joint or solidary negligence are not allegations of fact but mere conclusions of law. In this respect we note the following pertinent language in Overstreet v. Ober, 14 La.App. 633, 130 So. 648:
"The plaintiff having alleged that each defendant was negligent, the purpose of the trial was to ascertain whether each was negligent, and, if not, which one."
An allegation of negligence is merely the pleader's own conclusion of law. Loprestie v. Roy Motors, Inc., 191 La. 239, 185 So. 11; Overstreet v. Ober, 14 La.App. 633, 130 So. 648.
More particularly, the precise issue herein presented was considered and determined adversely to defendant's contention in Hornor v. McDonald, 52 La.Ann. 396, 27 So. 91. In the cited authority plaintiff alleged the obligation sued upon to be solidary in character and prayed for judgment in solido. During the pendency of the suit and after issue joined, plaintiff reached a compromise agreement with one defendant without specific reservation of his rights against the remaining respondents who then contended the averment of solidary liability was a judicial admission barring recovery against them by virtue of the discharge of his solidary co-debtor. The Court then sustained plaintiff's position that the averment of solidary liability was a mere conclusion of law and found the obligation in question was joint rather than solidary. See Minor v. Hart, 52 La.Ann. 395, 27 So. 99, and Roder v. Succession of Hart, 52 La.Ann. 215, 27 So. 238, connected cases.
Counsel for defendant Coca-Cola Bottling Company argues that since the plaintiffs' supplemental petition alleged that both the defendant Coca-Cola Bottling Company, Ltd. and Food Town, Inc., which had been released from the case, were joint tort feasors, that allegation amounted to a judicial confession or admission as between the plaintiffs and the defendants and they were bound by this judicial confession and any award against the said Baton Rouge Coca-Cola Bottling Company should be reduced in half. However, the Trial Judge *697 passed upon this point and held the facts showed that defendant Coca-Cola Bottling Company had failed to prove that defendant Food Town was guilty of any negligence and as this case was tried on the merits it is the opinion of this Court that the statement concerning the effect of the pleadings in determing negligence, as mentioned in the above cited portion of the Harvey case, is inapplicable and it cannot be said from an examination of the record that the Trial Judge was erroneous in holding that Food Town was free from any negligence whatsoever.
It is therefore the holding of this Court that in view of the fact that the plaintiff Mrs. Virginia Watkins Naquin was incapacitated for a period of approximately ten days and was left with a permanent scar which the surgeon said would not be helped by surgery, the award of the Trial Judge is neither excessive nor inadequate.
For the above and foregoing reasons the judgment of the Trial Court is affirmed.
Affirmed.